
# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-17-26

**Opinion Delivered** June 21, 2017

BRANDI MILLER AND DANA CROSBY

APPELLANTS

V.

ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN

APPELLEES

APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT
[NO. 72J-16-34]

HONORABLE STACEY ZIMMERMAN, JUDGE

AFFIRMED

## DAVID M. GLOVER, Judge

This is an appeal from the termination of the parental rights of Dana Crosby and Brandi Miller to two children, D.C. (D.O.B. 1/04/2015 – female) and D.C. (D.O.B. 3/31/2005 – male). Brandi has other children not fathered by Dana who were involved in this case, but these two children are the only ones involved in this appeal. Brandi and Dana have each filed separate briefs. Brandi challenges only the adoptability prong of the trial court's best-interest finding. Dana challenges the statutory grounds and the potential-harm prong of the best-interest finding. We affirm the termination of parental rights with respect to both parents.

This case originated in Sebastian County. D.C. (male) was taken into custody in late October 2013. D.C. (female) was not yet born. The case arose because Dana and Brandi were involved in a domestic disturbance. Brandi was at Dana's house; they were arguing;

Brandi tried to take D.C. (male) but Dana did not want her to because he said she was homeless. Dana told Brandi to leave, locked her out, and she kicked in the window. Although D.C. (male) was born March 31, 2005, Dana and Brandi did not marry until April 10, 2010. Consequently, at that point, Dana was not recognized as D.C. (male)'s legal father, and because Brandi was being arrested on outstanding warrants, a seventy-two-hour hold was taken on D.C. (male). The affidavit further noted that Dana had been drinking beer and was visibly upset by the incident. An emergency custody order was entered; Brandi stipulated to probable cause; and a referral was made for Dana to be tested for paternity.

On December 27, 2013, D.C. (male) was adjudicated dependent-neglected. Reunification was the original goal. The case proceeded with services offered and review hearings held. The March 10, 2014 review order found The Arkansas Department of Human Services (DHS) had made reasonable efforts to provide services to achieve the goal of reunification, and genetic testing established Dana was the biological and legal father of D.C. (male). The order further found the parents had not complied with the court's orders or the case plan. In particular, the court found they had not obtained stable and appropriate income, employment, and transportation; had not completed a drug-and-alcohol assessment; had not completed parenting classes; had tested positive for THC during the pendency of the case; and had not completed hair-follicle testing despite multiple referrals by DHS. In addition, the court found that although Dana had obtained stable and appropriate housing, Brandi had not.

In the August 11, 2014 permanency-planning order, the trial court set concurrent goals of reunification and termination, finding the parents were compliant with portions of

the case plan and court orders, but not compliant with others. The portions where they were noncompliant included failure to complete a drug-and-alcohol assessment, testing positive for illegal substances during the pendency of the case, Dana's failure to complete a hair-follicle drug test as requested, failure to complete parenting classes or domestic-violence classes, and issues regarding regular visits with the children. The trial court further found DHS had made reasonable efforts to provide family services and to finalize a permanency plan. On August 13, 2014, a judgment of paternity was entered establishing Dana as the father of D.C. (male) and ordering him to pay child support in a specified amount.

On November 10, 2014, the trial court entered a fifteen-month permanency-planning order, which changed the goal of the case to adoption, following termination of parental rights. The trial court found the parents had not complied with the established case plan or the court orders, had not made significant measurable progress toward achieving the case plan's established goals, and had not been diligently working towards reunification. The court's specific findings of noncompliance included failure to complete drug-and-alcohol assessments, failure to participate in individual and family counseling, testing positive for illegal substances throughout the pendency of the case, failure to complete parenting classes and domestic-violence classes, and missing a significant number of visits with the children. The court further found DHS had made reasonable efforts to provide family services.

On December 31, 2014, DHS filed a petition for termination of parental rights. On March 26, 2015, Brandi moved to continue the termination hearing because she and Dana had another child, D.C. (female), who was born on January 4, 2015, and had complications

due to a premature birth. On April 9, 2015, the trial court entered a review order in which it granted the motion for continuance, reviewed the case, and noted that all parties expressly waived the ninety-day period required by the juvenile code for a petition to terminate parental rights to be heard. The goal of the case remained adoption following termination of parental rights.

Following a continuance requested by DHS, another permanency-planning hearing was eventually held on August 13–14, 2015. By amended order entered on September 25, 2015, the trial court changed the goal from adoption and termination to reunification, finding that it was in the children's best interest to give the parents more time to comply but cautioning the parents that they did "not have much longer." The court found the parents had not shown stable and appropriate housing or income and had not completed a drug-and-alcohol assessment. In addition, the order recounted evidence entered by the court, including an affidavit of arrears regarding Dana's child-support obligations, Dana's April 3, 2015 drug-screen result, counseling summaries, and certified copies of transcripts of a judgment against Dana for possession of instrument of a crime from an original charge of possession of marijuana. The order further noted that DHS proffered an August 12, 2015 drug screen for Dana showing positive results for THC and methadone and that DHS had made reasonable efforts to provide services.

Soon thereafter, on October 22, 2015, D.C. (female) was removed from her parents' custody. An emergency custody order was entered on October 23, 2015 for D.C. (female). The accompanying affidavit explained in part that DHS had received a call on October 21 reporting that Brandi's older daughter (not involved in this appeal) had threatened to kill

herself if she were returned to Brandi's house, making allegations against Brandi and also alleging Dana provided her with marijuana. When family-service workers went to Brandi and Dana's house to inform them a hold had been placed on Brandi's older daughter, Brandi became irate, both parents were unwilling to submit to a drug screen, the family-service workers called police to help calm the situation, the parents then engaged in a heated argument with a police officer, and both parents acknowledged they had moved in the last month and that neither of them was working or drawing government benefits. A medical-records review revealed D.C. (female) was behind on all of her immunizations. The affidavit further revealed that after the seventy-two-hour hold had been placed on D.C. (female), Brandi and Dana submitted to a drug screen, that showed both were positive for THC.

A probable-cause hearing was held on October 27, 2015, the parents stipulated probable cause existed, and the probable-cause order was entered on November 17, 2015. Both parents were ordered to submit to hair-follicle drug testing as requested by DHS.

A review/adjudication hearing was held on December 8, 2015. By adjudication order entered on January 4, 2016, D.C. (female) was adjudicated dependent-neglected, finding in part that D.C. (female) tested positive "at very high levels" for illegal substances, including methamphetamine, cocaine, and THC, while under the care of her parents. In the review order, also entered on January 4, 2016, the trial court further found the parents had not complied with the case plan or the court's orders. In particular, they had moved to Fort Smith during the review period and Brandi then returned to her father's house in Fayetteville; they were not working and had no stable income; they failed to complete drug-and-alcohol assessments; they failed to complete parenting classes; they failed to obtain

counseling/anger management; and they continued to test positive for THC. The trial court set concurrent goals of reunification and adoption following termination of parental rights.

Soon thereafter the case was transferred from Sebastian County to Washington County. The January 27, 2016 review hearing was continued until April 13, 2016, but an interim review hearing was held on February 24, 2016. In the February 25, 2016 review order, the trial court found Brandi and Dana had not complied with many of the items specified in the case plan and court orders. In particular for Dana, the court found he had not submitted to random drug screens; he had not completed parenting classes; he had not attended all of the visitations; he had not gone to counseling; and he did not have stable housing.

The scheduled April 13, 2016 setting became a permanency-planning hearing for D.C. (male) and a review hearing for D.C. (female). By order entered the same date, the trial court continued the goal of reunification for both children until the next scheduled hearing set for May 13, 2016.

On May 13, 2016, part two of the permanency-planning hearing for D.C. (male) was held along with a permanency-planning hearing for D.C. (female). By order entered the same date, the trial court changed the goal with respect to both children to termination of parental rights, specifically finding with respect to Dana that he had not maintained his weekly contact with DHS, had not submitted to random drug screens (even though he tested clean on a drug screen that day), had not demonstrated sobriety, had not provided proof of completion of parenting classes and stable employment, and was behind on his child support. The court further found DHS had provided reasonable services.

On June 13, 2016, DHS filed a petition for termination of Brandi's and Dana's parental rights. The termination hearing was held on September 7, 2016, after which the trial court entered its order terminating their parental rights to D.C. (male) and D.C. (female).

Our review of cases involving the termination of parental rights is de novo. *Harbin v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231. Grounds for termination must be proved by clear and convincing evidence, which is such a degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.* Our inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* Credibility determinations are left to the fact-finder. *Id.*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Id.* The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id.* There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.*



*Brandi Miller*

Brandi's only contention is that the trial court erred in terminating her parental rights because the likelihood-of-adoption prong of the best-interest finding was not supported by sufficient evidence. We disagree.

Melanie Chandler, a family-service worker, testified at the termination hearing. She stated D.C. (male) was an adoptable child; he was very bonded to the family with whom he had been placed in foster care; he was doing very well there; and she believed it was a pre-adoptive placement for him. Chandler further testified D.C. (female) was an adoptable little girl; she was healthy, happy, doing well, and had bonded with her foster family; and her foster family was a potential permanent placement for her.

In reaching the overall best-interest finding, the trial court must consider two factors: the likelihood of adoption and the potential for future harm. *Harbin*, *supra*. While these two factors must be considered by the trial court, neither has to be established by clear and convincing evidence. Rather, after consideration of all factors, the evidence must be clear and convincing that it is in the children's best interest to terminate parental rights. *Harbin*, *supra*.

Here, the trial court clearly considered the adoptability prong. There was testimony from the family-service worker that she believed both children were adoptable, along with details concerning their health and how they were progressing and how they were getting along in their placements. Based on the evidence presented, the trial court found it was likely the children would be adopted. We are not left with a definite and firm conviction that the trial court made a mistake in this regard.

*Dana Crosby*

The statutory grounds alleged for termination of Dana's parental rights were "subsequent factors" and "twelve-month/failure to remedy." Ark. Code Ann. § 9-27-341 (Repl. 2015). The trial court found DHS proved both grounds. Proving the existence of only one ground is sufficient. *Martin v. Arkansas Dep't of Human Servs.*, 2017 Ark. 115, ___ S.W.3d ___. In addition, the trial court found it was in the children's best interest to terminate Dana's parental rights, taking into consideration the likelihood they would be adopted and the potential for harm if they were returned to Dana. Dana challenges the trial court's findings regarding the statutory grounds and also the potential-harm prong of the best-interest analysis. We find no basis for reversal.

The long procedural history of this case has already been set forth, was part of the record before the Washington County Circuit Court, and need not be repeated here. At the termination hearing, Melanie Chandler testified she did not believe the children would be safe if they were returned to Dana. She explained Dana had not demonstrated stability, he had not followed the court's orders or the case plan, he was still staying with his grandmother in Fort Smith, and he had not followed through with services set up by a secondary worker in Sebastian County or with services set up in Washington County. She said she did not feel Dana was in compliance with the court's orders.

Chandler explained Dana had not maintained weekly contact with her; had not kept her informed of his whereabouts; had not demonstrated sobriety; and had not submitted to a drug-and-alcohol assessment or submitted to random drug screens every other week in Sebastian County. She further explained Dana had a secondary worker in Sebastian County

for these services; he had not provided her with proof of completion of twelve hours of parenting classes; he had not demonstrated an ability to protect D.C. (male) and D.C. (female) and keep them safe from harm; and he was not in compliance with the case plan and court orders. Chandler testified permanency was the most important thing for D.C. (male) and D.C. (female); yet, DHS had been involved with this family for almost three years, and Brandi and Dana had never been in full compliance with the case plan and court orders.

Dana testified he had lived in Fort Smith and worked at a flooring company for more than a year. He stated he had tried to be in regular contact with Chandler; that he would call every morning in front of his boss; he would leave messages but had not been able to physically talk to her; and the last time he recalled actually talking to Chandler was before the last hearing. He said his secondary worker in Sebastian County had come by his house one time and had taken a urine test but he never heard back from her. He acknowledged she told him her name, but he could not remember it. He first stated he had tried to call DHS in Sebastian County but was not able to get in touch with anyone. He then explained that the Sebastian County office personnel told him they did not have any Washington County cases and he needed to call his Washington County caseworker to get information. He said he tried to call Chandler and did not get an answer.

Dana testified he was never called to come in for a drug-and-alcohol screening or assessment. He acknowledged he was the one who was supposed to pursue the drug-and-alcohol screening and assessment but stated he did not know whom to contact. He stated he was not given any referrals for parenting classes; he completed the psychological

evaluation but was not recommended for any counseling. He testified he was separated from Brandi and planned to get a divorce.

Dana testified the last time he talked to D.C. (male), D.C. "kind of broke down on me and let me know he's ready to come home . . . [h]e was tired of waiting around on it." He stated he had been visiting with both of his children until "today," explaining that the visit scheduled for the date of the hearing slipped his mind because of everything going on. He said his other visits "have been excellent."

Dana expressed his belief that he had proved stability. He stated he had a regular income, and he paid his bills. He acknowledged, however, he was behind in his child support "quite a bit." He explained he had started making payments a couple of months ago, and the payments came out of his paycheck once a week. He acknowledged he had not taken this case as seriously as it warranted at the beginning; he did not get a drug-and-alcohol assessment in 2014 or 2013; he was just re-referred but did not get one; and he has set up an appointment for one. He also acknowledged he had been ordered to undergo random drug screens; he had not brought with him any proof that he had gone to AA or NA meetings despite the fact he knew the court was concerned about his sobriety. He explained a person needs a referral for parenting classes in Sebastian County, but they didn't have any information on this case in Sebastian County. He acknowledged, however, he did not try to find a place where he could go and get parenting classes to show the judge he was trying to comply with the orders.

Upon questioning by the trial court, Dana acknowledged D.C. (male) had been in DHS custody since October 2013; D.C. (female) came into care about ten months later;

and the case was transferred to Washington County from Sebastian County when Brandi moved to Washington County, while he remained in Fort Smith. He stated the children were brought to his house for visits; the visits were "excellent"; D.C. (male) had lived there before and was "right at home"; and D.C. (female) feels at home also because she sees that her brother is comfortable. He said the last time he and Brandi lived together was when DHS came and got D.C. (female) in the fall of 2015.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii) (*a*) sets forth the "subsequent factors" ground for termination, which is one of the statutory grounds the trial court found DHS had proved in this case:

> (vii)(*a*)  That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent the placement of the juveniles in the custody of the parent.

With respect to this ground, the termination order provided in part that Dana Crosby had not maintained weekly contact with DHS, had not submitted to random drug screens, had not demonstrated sobriety, had not provided proof of completed parenting classes, and had missed a visit with the children on the date of the hearing. The trial court further noted Dana was behind on his child support, and the children had lingered long enough because the three-year timeline of the case had to be viewed from the perspective of the children.

Dana challenges the court's finding with several arguments, including one in which he seems to argue that because he did not undergo drug screens, there were no drug screens to show that he had been using drugs, and therefore, any finding he had not maintained his

sobriety was based on speculation. He further argues, that with respect to maintaining contact with DHS, someone from DHS brought the children to him for his regular visits and that those visits were coordinated among him, the foster parents, and DHS, and that he had tried to be in contact with Ms. Chandler, calling her every morning in front of his boss and leaving messages, but he got no response. Concerning his visits with his children, he argues they were "excellent." He explains he forgot about the visit scheduled on the date of the termination hearing because he was so focused on the hearing; acknowledging in a footnote, however, that "the only other information in the record regarding the frequency of visits was at the Review Order on April 9, 2015 (more than a year prior to termination), finding that Dana made 28 of 53 visits." With respect to his lack of stability in employment and housing, he argues he maintained the same housing and employment for more than a year prior to the hearing. He further argues he did not engage in couples counseling because he and Brandi were separated and he planned to file for divorce. With respect to any failure to engage in family counseling with D.C. (male), he argues there was "absolutely no indication in the record that [he] was offered and refused the counseling, in fact [he] testified that he wasn't recommended to do counseling." We do not find any of his arguments convincing.

A parent's failure to comply with court orders can serve as a "subsequent factor" upon which termination can be based. *Clements v. Arkansas Dep't of Human Servs.*, 2013 Ark. App. 493. Here, Dana was ordered to do several things throughout the course of this case. He completed some of the things he was ordered to do, but not all. DHS presented several areas of noncompliance, and the trial court was satisfied that DHS proved several

specific deficiencies. In addition, Dana acknowledges that he was ordered to complete parenting classes and undergo a drug-and-alcohol assessment throughout the case and that he did not do so. During the course of the case, he tested positive for THC, even as late as January 2016. He also did not pay child support as ordered.

Dana's attempt to rely upon his own failure to undergo drug screens to somehow argue that the trial court's finding that he failed to demonstrate sobriety was based on speculation is misguided. Similarly, his argument that his conversations with DHS personnel and the foster parents about the mechanics of scheduling visits with his children was tantamount to satisfying his obligation to maintain weekly contact with DHS is not convincing. Moreover, to the extent Dana's arguments include contentions he was not provided with reasonable family services, over the long course of this case he failed to object to the trial court's repeated findings that DHS had made reasonable efforts. In addition, his argument that the three-to-four-month span of time from the permanency-planning hearing to the termination hearing was without reasonable efforts falls far short of providing a basis for reversal.

We are not left with a definite and firm conviction that the trial court made a mistake in concluding that DHS proved the "subsequent factors" ground in this case. Because the proof of one statutory ground is sufficient to demonstrate parental unfitness, it is unnecessary to address Dana's challenge to the second statutory ground. *Martin*, *supra*.

Finally, the same evidence that supports the "subsequent factors" ground also supports the potential-harm prong of the trial court's best-interest finding, which is the only prong Dana challenges. In addition to the other areas of noncompliance established by DHS,

SLIP OPINION

Dana acknowledges he was ordered to complete parenting classes and undergo drug-and-alcohol assessments throughout the case but did not do so. Neither did he pay child support as ordered. During the course of the case, he tested positive for THC, even as late as January 2016. The trial court was not required to find that actual harm would ensue if the children were returned to the parent nor to affirmatively identify a potential harm. *Sharks v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. The potential-harm analysis is to be conducted in broad terms. *Id.*

The intent of our termination statute is to provide permanency in a minor child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare, and where the evidence demonstrates the return cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Harbin*, *supra*. The child's need for permanency and stability may override the parent's request for additional time to improve the parent's circumstances. *Id.* The issue is whether the parent has become a stable, safe parent able to care for the child. *Id.* The court may consider the parent's past behavior as an indicator of future behavior, and even full compliance with the case plan is not determinative. *Id.* Finding no clear error in the trial court's bases for terminating Dana's parental rights to D.C. (male) and D.C. (female), we affirm.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant Brandi Miller.

*Dusti Standridge*, for appellant Dana Crosby.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.