

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-300

| | |
|---|---|
| MOLLY BYNUM[1] | Opinion Delivered: September 20, 2017 |
| APPELLANT | |
| | APPEAL FROM THE STONE |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 69JV-14-23] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE LEE WISDOM |
| HUMAN SERVICES AND MINOR | HARROD, JUDGE |
| CHILDREN | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Molly Bynum[1] appeals after the Stone County Circuit Court filed an order terminating her parental rights to Z.L. (DOB 12-30-2013) and H.B. (DOB 8-26-2015) on January 24, 2017.[2] On appeal, appellant argues that the trial court erred in terminating her parental rights because (1) there was insufficient evidence supporting the grounds asserted in the joint petition to terminate parental rights and (2) there was insufficient evidence that termination was in the best interest of her children. We affirm.

---

[1]Appellant is referred to as Molly Bynum, Molly Lawrence, and Molly Lawrence-Bynum throughout the proceedings.

[2]Z.L.'s father, Zachary Staffen-Lewis, consented to the termination of his parental rights and is not a party to this appeal. The trial court additionally terminated the parental rights of Anthony Bynum, H.B.'s father. However, Anthony did not appeal the termination and is therefore not a party to this appeal.

SLIP OPINION

I. *Facts*

Appellant is Z.L.'s mother and resided in Searcy, Arkansas. Zachary Staffen-Lewis (Lewis) is the father of Z.L. and resided in Mountain View, Arkansas. Lewis had custody of Z.L. Lewis appeared in the Stone County Circuit Court on unrelated charges and was ordered to take a drug test. Lewis tested positive for methamphetamine and admitted to using marijuana. Arkansas Department of Human Services (DHS) was notified. DHS contacted appellant, and appellant advised DHS that Lewis had been physically abusive to her in the past. At some point, appellant threatened to kill herself and her baby, Z.L. Accordingly, on August 7, 2014, DHS filed a petition for ex parte emergency custody and dependency-neglect of Z.L. The trial court granted the petition, finding that probable cause existed for the removal. Subsequently, the trial court filed a probable-cause order.

An adjudication hearing was held on October 8, 2014. The record indicates that both parents attended the hearing, but appellant was incarcerated at the White County jail. The trial court found that Z.L. was dependent-neglected as defined in the Arkansas Juvenile Code and that Z.L. was subjected to inadequate supervision due to the drug use of the father and threat of harm by the mother due to her threat to kill her child. The trial court additionally ordered the following:

> The parents are ordered to complete the case plan, comply with the orders of the Court, and cooperate with the Department. Additionally, the mother is directed to contact the Department and provide the Department with her address upon her release from the White County Jail. The Father is ordered to cease the use of methamphetamine and all other controlled substances not prescribed by a medical care provider.

Subsequently, in an agreed order, Harold Staffen, Z.L.'s paternal great-grandfather, was given temporary custody of Z.L. However, the trial court ordered that the parents were

2

not authorized to visit with Z.L. outside court orders and that the visitation must be supervised in DHS's discretion with the approval of the attorney ad litem.

A review hearing was held on February 4, 2015, and the trial court found that appellant had not complied with the case plan. It noted that the mother had been incarcerated in the White County jail since the case was filed and that she had missed visitation. In a permanency-planning order filed on July 22, 2015, the trial court found that DHS had made reasonable efforts to finalize a permanency plan but that it was continuing the case for a subsequent permanency-planning hearing to hear evidence on the issues regarding parental compliance, additional visitation, and educational issues.

While the proceeding pertaining to Z.L. was ongoing, appellant gave birth to another child, H.B., on August 25, 2015. A petition for emergency custody and dependency-neglect was filed after H.B. was removed from appellant's care. In the attached affidavit, it stated that H.B. was removed due to the open case in which appellant has unresolved mental-health issues that caused her to threaten harm to Z.L., necessitating Z.L.'s removal. The trial court granted the petition, and a subsequent order finding probable cause was filed.

Around this time, DHS discovered that Harold Staffen, the temporary custodian of Z.L., had allowed Z.L.'s father, Lewis, to move into his residence despite a court order that prohibited visitation between Lewis and Z.L. without prior court approval. The trial court granted a motion for ex parte emergency change of custody of Z.L. and returned custody of Z.L. to DHS.

At this point, the trial court proceeded with hearings for both Z.L. and H.B.; however, each child was at a different point in their respective proceedings. The trial court

SLIP OPINION

held an adjudication hearing regarding H.B. and a permanency-planning hearing regarding Z.L. on September 23, 2015. Regarding H.B., the record indicates that Anthony Bynum is his father, and the trial court found H.B. to be dependent-neglected. In the adjudication order, the trial court ordered the following:

> The Parents [Molly Bynum and Anthony Bynum] are ordered to:
> a. Cooperate with the department, comply with the case plan, and obey all orders of the court.
> b. Keep at least weekly contact with the case worker, keep the department informed of current address, and notify the department of any changes in address, contact information, marital status or employment status.
> c. Obtain and maintain clean safe and stable housing with the utilities turned on.
> d. Allow the department access into the home for purposes of monitoring.
> e. Obtain and/or maintain stable employment or income sufficient to support the family.
> f. Remain drug free and submit to random drug screens with any refusal to comply or failure to submit a specimen within one hour to be deemed a positive result.
> g. If prescribed medication, provide proof of medication to the Department on a regular basis to comply with the results of random drug screens.
> h. Continue following the recommendations of any drug and alcohol treatment providers and mental health providers.

In the permanency-planning order for Z.L., the trial court found that the parents had substantially complied with the case plan. It further ordered the parents [Molly Bynum and Zachary Staffen-Lewis] to do the following:

> a. Cooperate with the department, comply with the case plan, and obey all orders of the court.
> b. View "The Clock is Ticking" video and participate in and complete parenting classes if they have not done so.
> c. Obtain and maintain clean safe and stable housing with the utilities turned on.
> d. Allow the department access into the home for purposes of monitoring.
> e. Obtain and/or maintain stable employment or income sufficient to support the family.
> f. Keep at least weekly contact with the case worker, keep the department informed of current address, and notify the department of any changes in address, contact information, marital status or employment status.
> g. Remain drug free and submit to random drug screens with any refusal to comply or failure to submit a specimen within one hour to be deemed a positive result.

h. If prescribed medication, provide proof of medication to the Department on a regular basis to comply with the results of random drug screens.

i. Continue following the recommendations of any drug and alcohol treatment providers and mental health providers.

j. Follow any mental health treatment recommendations.

On December 7, 2015, a combined review hearing was held for H.B., and a 15-month review hearing was held for Z.L. The trial court found appellant only partially compliant, Lewis minimally compliant, and Anthony Bynum noncompliant. The trial court noted that appellant had negative drug screens but that her husband (now Anthony Bynum) had positive drug screens. Appellant additionally admitted to residing with people who used drugs, and there were concerns about her mental health. Appellant was ordered to attend a psychological assessment if requested and continue following any mental-health treatment/recommendations. The goal for Z.L. was changed to termination of parental rights with adoption, and the goal for H.B. remained as reunification.

DHS filed a petition for termination of parental rights for each child on January 15, 2016, and an amended petition for termination of parental rights on August 29, 2016. As to appellant, DHS alleged several grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Repl. 2015), including the failure to remedy, failure to provide significant material support or contact, subsequent factors, and aggravated circumstances regarding Z.L.; and failure to remedy, subsequent factors, and aggravated circumstances regarding H.B.

At the termination hearing, Dr. George DeRoeck testified that he is a clinical psychologist and that he had evaluated appellant. Dr. DeRoeck testified that appellant was unable to explain why her children had been placed in foster care. He explained that

appellant had an overall IQ range of 62, which is in the mid-mild deficient range. Appellant had self-reported that she had three inpatient hospitalizations and that she had previously stopped taking her medication, which caused suicidal thoughts. He expressed concern that she had mild-to-moderate situational depression and a seizure disorder. He further opined that appellant did not have the capacity to independently parent given her overall intellectual development, seizure disorder, and questionable response to psychoactive medications. Thus, Dr. DeRoeck stated that appellant would need a lot of support in order to parent or would be better acting as a secondary caregiver. Finally, Dr. DeRoeck expressed his concern over appellant acting as an independent parent if she stopped attending day treatment for mental-health issues without being discharged.

Appellant testified at the hearing that she is married to Anthony Bynum, H.B.'s father, but had filed for divorce. However, after further questioning, she did not know the status of the divorce but stated that Anthony had thrown away their marriage license. She explained that she was pregnant at the time of the hearing and that Anthony's brother and her new fiancé, David Bynum, is the father of her unborn child. Appellant admitted that Anthony had beaten her and that they both had been arrested. She testified that she had returned to try to work things out with Anthony despite a no-contact order. She further indicated that she had stopped seeing him after she had smoked methamphetamine with him and he had held a gun to her head. During the pendency of the case, appellant lived off and on with her biological father, who she stated had his parental rights terminated at one point.

SLIP OPINION

At the time of the hearing, appellant stated that she was renting a house and that David Bynum was living with her. She explained that she had started receiving disability for depression disorder and a stress disorder with psychotic features approximately two months prior to the hearing. Appellant testified that although she had been attending Pine Valley Day Treatment, she had stopped attending about a month before the hearing because she felt that she would need to be at home all day if her children were returned. Furthermore, appellant testified that she felt that her symptoms worsened when she attended group treatment and that she desired to be referred to a different therapist for one-on-one treatment. She denied that she had threatened to hurt Z.L. or that she was associating with anyone who was using illegal drugs. Appellant testified that she had stable housing after receiving disability income and that she was attending visitation with her children.

Ruby Pratt testified that she was the secondary family-service worker assigned to the case. Ms. Pratt testified that appellant's residence changed on almost a monthly basis during the pendency of the case. She confirmed that appellant's most recent address, which was established only a few weeks before the termination hearing, was appropriate housing. However, she had concerns with appellant's prior housing situations and appellant's ability to maintain stable housing. Ms. Pratt additionally testified that appellant had admitted to her that she had overdosed on her medication when she was stressed. Finally, Ms. Pratt testified that the children were doing well in foster care. She opined that it would therefore not be appropriate or safe to return the children to appellant's custody based on the case history.

Shawn Collins testified that he is a licensed professional counselor and that he had treated appellant. He testified that although appellant had been attending group therapy on a regular basis, she had stopped attending about a month before the termination hearing. Therefore, appellant did not complete her treatment program. During appellant's treatment, Mr. Collins had some concerns about her behavior. She believed in ghosts, heard voices, and believed that one could cast spells and other "magical thinking." Thus, Mr. Collins thought she might have an additional diagnosis of schizotypal personality disorder.

Krista McMaster testified that she was another caseworker assigned to this case. She explained that she continued to have concerns about potential substance-abuse issues because David, appellant's current fiancé, had a history of drug abuse. Additionally, appellant previously associated with people who had significant past drug use. Although appellant completed in-home counseling, she dropped out of the day-treatment program. Therefore, Ms. McMaster testified that she had concerns with returning the children to appellant's custody because appellant still had untreated mental-health conditions. Furthermore, out of 98 scheduled visits with her children, appellant had attended only 36 visits. Therefore, appellant was not in compliance with her case plan, and Ms. McMaster opined that the children would be at risk of harm if the children were returned because of her untreated mental-health issues and pattern of instability. Ms. McMaster further opined that both children would be adoptable if appellant's parental rights were terminated.

After the hearing and oral arguments, the trial court terminated appellant's parental rights to each child. In the termination order, the trial court made the following pertinent findings:

9. As to Molly Lawrence the court finds as follows:

    a. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* a child has been adjudicated dependent neglected, and has remained out of the home twelve months and despite a meaningful effort, the parent has failed to remedy the issues which caused removal. The Court finds that both [Z.L.] and [H.B.] have been adjudicated dependent neglected children. [Z.L.] on August 8, 2014, and [H.B.] on September 23, 2015. Both children have been out of the home for more than twelve months, [Z.L.] for more than 23 months, and [H.B.] for 13 months. Despite a meaningful effort by the department to rehabilitate the mother and the conditions which caused removal, those conditions have not been remedied. This case started with mental health issues of the mother, and threats of harm to both herself and the child, and at the same time there was drug usage by the father, and at the time the child came into care there were domestic abuse issues in the home. [Z.L.] was adjudicated dependent neglected based on parental unfitness based on the mother's mental health issues, and on dad due to domestic abuse and drug use, and inadequate supervision. In the last 23 months, mom has worked the case plan, but has failed to remedy the causes of removal. She has been arrested, has had at least one occasion of drug use, specifically methamphetamine, has residence after residence, and the vast majority of them were inappropriate in some way, homes with drug use, or environmental issues, homes where there was a threat of harm to the health and safety of the children and where the court could not have placed the children. Most recently the mother started day treatment, and the court found that was a positive development, she had a chance to go to treatment 5 days a week, but by the testimony she went on average three days a week, they recognized the possibility of diagnosing her with additional mental health issues and had worked with the mother on those issues. She overdosed on drugs since the children came into care. However, the mother has subsequently left that treatment and has remaining untreated mental health issues. Also, there has been continued domestic violence between the parents, Ms. Lawrence and Mr. Bynum.

    b. In addition, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, there are other factors or issues which demonstrate it would be contrary to the health, safety or welfare of the juveniles, and the parent has been incapable or unwilling of remedying those factors. The Court also finds that there are other issues or factors which have arisen subsequent to the initial adjudication of dependency neglect, which make it contrary to the health, safety or welfare of the children to be placed in the home and which the mother has shown incapacity or indifference toward remedying. The court has concerns about her capacity to remedy the health issues, and fix those issues. The court finds the mother has complied with some parts of her case plan, but has had more issues with noncompliance, than compliance. She has bounced from house to house with issues. She has had several visits to the hospital, and despite her husband's

domestic violence and drug issues, she continued to try to work it out with him, lived in a house with an individual who, by her own admission, had attempted to make sexual advances on her husband. She has not been employed for a number of months although she did recently get on disability, which the department assisted her with. The court finds the mother has an incapacity toward remedying these issues, and they prevent the placement.

c. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)* The court finds the mother has subjected the child to aggravated circumstances. There is little likelihood that further services to the mother would result in successful reunification. The mother has had nearly 23 months of total services to attempt to reunify with her children and has been unable to accomplish it.

10. The Court finds by clear and convincing evidence that it is in the best interests of the child that parental rights be terminated. The Court finds that the children are both adoptable and there is a likelihood they would be adopted, and that it would be contrary to the health, safety and welfare of the juveniles and they would be at risk of harm if they were returned to the parents.

11. The Court finds Dr. DeRoeck was credible, and finds that Ruby Pratt was credible, that Shawn Collins was credible and that Ms. McMaster was a credible witness. The court finds parts of the mother's testimony was credible, but as a whole was not credible.

12. As such, the Court grants the Petition of the Department of Human Services and hereby terminates all parental rights between Molly Lawrence-Bynum, Anthony Bynum and Zachary Steffen Lewis, Sr., and their children.

. . . .

14. The Court finds that the Arkansas Department of Human Services made reasonable efforts to finalize the permanent placement for the juvenile and the juvenile cannot or should not be returned to the home of the parents(s).

This appeal followed.

## II. *Statutory Grounds*

A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a

firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

Appellant argues that the trial court erred in terminating her parental rights because there was insufficient evidence to support the grounds asserted in the joint petition to terminate parental rights. We disagree.

The trial court granted the termination petition on three grounds: (1) the failure-to-remedy ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*; (2) the

subsequent-factors ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*; and (3) the aggravated-circumstances ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)*. Arkansas Code Annotated section 9-27-341(b)(3)(B) defines these grounds as follows:

> (i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.
>
> . . . .
>
> (vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
>
> . . . .
>
> (ix)*(a)* The parent is found by a court of competent jurisdiction, including the circuit court juvenile division, to:
>
> . . . .
>
> > (3)(A) Have subjected any juvenile to aggravated circumstances.
> >
> > (B) "Aggravated circumstances" means:
> > (i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

In this case, DHS sufficiently proved that the subsequent-factors ground had been satisfied. A parent's failure to comply with court orders can serve as a subsequent factor upon which termination can be based. *Miller v. Ark. Dep't of Human Servs.*, 2017 Ark. App.

396, ___ S.W.3d ___; *Clements v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 493. Here, appellant was ordered by the trial court to comply with the case plan, obey all orders of the court, obtain and maintain clean, safe, and stable housing, and follow any mental-health-treatment recommendations.

Appellant alleges in her brief that she was willing to do one-on-one counseling, if referred, rather than the group day treatment that she admittedly quit. She further alleges that she addressed all concerns regarding the children's return to her custody because she had addressed her mental-health issues, ended the abusive relationship with Anthony, and obtained stable housing and income. However, the trial court found her testimony overall to not be credible, and we give deference to the trial court's credibility determinations. Furthermore, several witnesses testified that they were concerned with appellant's capacity to independently care for her children due to her untreated mental-health issues. Several of those witnesses also expressed concerns after appellant intentionally quit attending her group therapy even though the trial court had ordered her to follow all mental-health-treatment recommendations. Furthermore, Ms. Pratt testified that appellant had failed to maintain stable housing throughout the case. In fact, it was only a few weeks before the termination hearing that Ms. Pratt indicated that appellant had obtained appropriate housing. However, Ms. Pratt testified that appellant had admitted that her fiancé was living with her and that her fiancé had a history of drug abuse. Because only one ground is necessary to terminate appellant's parental rights, appellant's failure to comply with court orders constituted sufficient evidence under the statute, and it is unnecessary to address the sufficiency of the other statutory grounds.

### III. *Best Interest*

Appellant next argues that the trial court erred in terminating her parental rights because there was insufficient evidence that termination was in the best interest of her children. She does not challenge that the children were adoptable. Instead, she alleges that the evidence failed to establish that she posed such a potential harm as to warrant terminating her parental rights. We disagree.

In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent or to affirmatively identify a potential harm. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. The potential-harm analysis is to be conducted in broad terms. *Id.* Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. *Id.* Here, appellant's behaviors over the course of the entire case as outlined above do not show enough stability to render the trial court's finding that appellant posed a risk of potential harm to the children clearly erroneous. As such, we must affirm.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.