Cite as 2019 Ark. App. 402

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-343

| | |
|---|---|
| ANTWAN DAVIDSON<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** September 25, 2019<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. 52JV-18-89]<br><br><br>HONORABLE DAVID W. TALLEY, JR., JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Antwan Davidson's parental rights to his child, M.E., were terminated by the Ouachita County Circuit Court on January 18, 2019. Davidson now appeals the termination, challenging the sufficiency of the evidence. We affirm.

M.E. was five years old when she was removed from the legal and physical custody of Davidson due to allegations of severe malnourishment. The circuit court entered an emergency order finding that M.E. was currently hospitalized due to extremely high levels of sodium, severe dehydration, and malnourishment. Prior to the probable-cause hearing, the Arkansas Department of Human Services (DHS) filed a petition for termination of parental rights alleging several grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2017). The circuit court found probable cause, and at the subsequent adjudication hearing, M.E. was adjudicated dependent-neglected for many reasons, including that her life was endangered.

At the termination hearing on January 2, 2019, the DHS caseworker, Pamela Ward, testified that she could not say that Davidson would provide the supervision necessary to protect M.E. from potential danger or harm and that DHS could not say that Davidson is willing and able to meet M.E.'s needs for food, clothing, shelter, and medical care. Because he had a criminal proceeding pending, Davidson chose to invoke his Fifth Amendment rights and did not testify at the termination hearing.

Without objection, DHS introduced the transcript and exhibits from the August 15, 2018 adjudication hearing at the termination hearing. Dr. Rachel Clingenpeel, an assistant professor of pediatrics at the University of Arkansas for Medical Sciences (UAMS) and the associate director of the Team for Children at Risk at Arkansas Children's Hospital (Children's), testified as an expert witness in child-abuse pediatrics at the adjudication hearing. Dr. Clingenpeel indicated that M.E. was critically ill, and her condition was life-threatening. M.E. was severely malnourished. She was dehydrated. She had severe electrolyte abnormalities, including hypernatremia, which is an elevated level of sodium in the blood. She was unable to stand without support. She was uncomfortable with any movement. During the two weeks M.E. was a patient at Children's, she gained roughly nine pounds.[1]

Following the termination hearing, the circuit court terminated Davidson's parental rights as to all alleged grounds, including that M.E.'s life was in danger. The circuit court also found that termination of Davidson's parental rights was in M.E.'s best interest. This timely appeal is now properly before this court.

---

[1]When five-year-old M.E. was removed from Davidson's home, she weighed only twenty-nine pounds.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. *Griffin v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 635. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juveniles will be adopted and of the potential harm caused by returning custody to the parent. *Id*. Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id*.

We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Id*.

In determining whether termination is in the best interest of the juvenile, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that would be caused by returning the juvenile to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii); *Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. *Chaffin*, 2015 Ark. App. 522, 471 S.W.3d 251. The evidence presented on potential harm must also be viewed in a forward-looking manner and considered in broad terms, but a circuit court is

not required to find that actual harm will result or to affirmatively identify a potential harm. *Id.*

Here, Davidson does not challenge the statutory grounds found by the circuit court to terminate his parental rights; therefore, Davidson abandons any challenge to those findings on appeal. *See, e.g., Byrd v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 139, at 3, 572 S.W.3d 900, 902; *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316–17 (2006). DHS argues that this is significant because the undisputed grounds also support the circuit court's best-interest finding by demonstrating that M.E. cannot be safely placed with Davidson and that she would be subjected to potential harm if placed in his custody. *See Miller v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 396, at 14, 525 S.W.3d 48, 57. The same evidence that supports the arguments that Davidson abandons on appeal also supports the potential-harm prong of the circuit court's best-interest finding. *Id.*

Nonetheless, we note that the circuit court's finding that Davidson chronically abused M.E. and subjected her to extreme, repeated cruelty supported the court's best-interest finding as did the court's finding that Davidson's actions toward M.E. constituted attempted murder or manslaughter and felony battery. The circuit court's finding that there was little likelihood that services to Davidson would result in successful reunification also supported the best-interest finding. None of Davidson's arguments regarding potential harm compel reversal.

As required by the Juvenile Code, a best-interest finding must include consideration of not only potential harm but also the likelihood of adoption. *See* Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). However, adoptability is not an essential element of proof. *McNeer v.*

4

*Ark. Dep't of Human Servs.*, 2017 Ark. App. 512, at 6, 529 S.W.3d 269, 272. It is only a factor that must be considered by the circuit court in determining the best interest of the child. *Id.* "It is the overall evidence, rather than proof of each factor, that must demonstrate that TPR is in the child's best interest." *Cox v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 202, at 8, 462 S.W.3d 670, 675. Additionally, DHS is not required to prove adoptability by clear and convincing evidence. *Reed v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 369, at 3, 417 S.W.3d 736, 738–39. The circuit court can consider the issue of adoptability and conclude that the juvenile is not adoptable but still determine that termination is in the juvenile's best interest. *See McDaniel v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263, at 5 (holding that even if the child was unlikely to be adopted, it was still in his best interest to terminate the parent's rights).

In the instant case, it is important to note that while DHS presented sufficient testimony about the lack of known barriers to M.E.'s adoptability, it also made its intention clear that it was not seeking to clear M.E. for adoption at that time. DHS was not seeking to terminate the parental rights of M.E.'s mother—who is not a party to this appeal—at the January 2, 2019 termination hearing. As such, M.E.'s mother's parental rights were still intact, and any action in pursuit of adoption was, at the time of Davidson's termination hearing, premature.

Still, the circuit court found that "the level of abuse and neglect . . . Davidson subjected [M.E.] to create[d] a threat of harm such that warrant[ed] terminating his parental rights without freeing the child for adoption." By making this finding, the circuit court ensured the satisfaction of its duty to consider adoptability in light of M.E.'s overall best interest. *See McNeer*, 2017 Ark. App. 512, at 7, 529 S.W.3d at 273 ("[W]e have held that

consideration of this factor requires evidence, or at least some finding by the circuit court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference."). Given the evidence as recounted above, there were serious and obvious concerns about the danger Davidson posed to his child and his indifference to protecting and caring for her and meeting her physical and developmental needs; thus, in this case, the adoptability issue made no legal difference. *See McKinney v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 140, at 7, 544 S.W.3d 101, 105.

We cannot say that the circuit court's best-interest finding against Davidson was clearly erroneous; accordingly, we affirm. *See Knight v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 602, 533 S.W.3d 592.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Dusti Standridge*, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.