Cite as 2026 Ark. App. 231

# ARKANSAS COURT OF APPEALS
### DIVISION II
No. CV-25-716

|  |  |
|---|---|
| ORNING RICKEY SEIGRIST<br><div align="right">APPELLANT</div><br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br><div align="right">APPELLEES</div> | Opinion Delivered April 15, 2026<br><br>APPEAL FROM THE LOGAN<br>COUNTY CIRCUIT COURT,<br>NORTHERN DISTRICT<br>[NO. 42PJV-24-15]<br><br><br>HONORABLE TERRY SULLIVAN,<br>JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Orning Rickey Seigrist appeals the Logan County Circuit Court order terminating his parental rights to his three children. Orning challenges the circuit court's best-interest finding, arguing that the Arkansas Department of Human Services (Department) did not present evidence or testimony regarding the children's adoptability, and the court failed to make any alternative finding that the absence of proof made no legal difference. We affirm.

### I. *Relevant Facts*

On April 21, 2024, the Department filed a petition for dependency-neglect and emergency custody regarding MC1 (age sixteen), MC2 (age fifteen), and MC3 (age twelve). In the affidavit attached to the petition, the Department alleged that Orning was the custodial parent, and the children's mother, Miranda Seigrist, had supervised visitation at

Orning's discretion. The children were removed from Orning's custody and placed in the Department's custody because he was arrested for third-degree domestic battery and endangering the welfare of a minor. Orning had punched MC2 in the face and subsequently fought with the neighbors over the incident.

The court found that the immediate removal of the children from Orning's custody was necessary to protect their health and safety, and the children were adjudicated dependent-neglected. Orning was referred for Department services and provided with a case plan. The goal of the case was reunification.

During the case, Orning's supervised visitation with MC1 and MC3 was suspended due to the children's dysregulated, high-risk behaviors that followed visitation with their father. Specifically, MC3 had flashbacks and was markedly more aggressive after visitation, and MC1 ran away a couple of times. MC1 also newly reported having been raped multiple times since she was six years old. In the October 31, 2024 review order, the circuit court found that there was "no chance of reunification" at that time because Orning was unemployed and physically unable to care for the children. In the February 25, 2025 review order, the circuit court found that the children still had "a lot of issues" and commended MC1 on her progress. Miranda, who had been out of the children's lives for years, had made an appearance in the case, and the court ordered the Department to refer her for services. Orning was still unable to care for the children, and the goal of the case remained reunification with a fit parent.

The court entered the permanency-planning order on June 18, authorizing the Department to seek termination of Orning's parental rights to all three children. The Department filed the petition for termination the next day. In the petition, the Department asserted that all three children were totally estranged from Orning. Serious abuse allegations had been made against Orning after the case began, and an investigation by the Arkansas State Police Crimes Against Children Division (CACD) was underway. Little to no visitation between Orning and the children had occurred, and he was still unemployed and unable to care for them. The goal of his case was changed to termination. The court found that in February 2025, Miranda began actively participating in services and court proceedings, and the court changed the goal in her case from termination and adoption to reunification. Between the children, they had forty different placements during the case. Each child had been placed in extended acute care at least once. The Department alleged that Orning had "put these children through extreme trauma and abuse as evidenced by what has transpired and by what has come to light through the CACD investigations since the children came into the care and custody of the Department." The children had expressed their desire to never see their father again. The Department alleged multiple statutory grounds against Orning, and regarding best interest, the Department contended that "consent to adoption is not applicable here because the Department is now working toward reunification of the juveniles with their mother." The Department also alleged that there was potential for harm if the children were returned to their father's custody due to Orning's instability, failure to protect the children, and his history of repeated abuse.

On July 16, the circuit court held the termination hearing. The court heard testimony regarding the CACD's investigation and true findings that Orning had severely abused the children. There was testimony about the extreme distress he caused all three children and their resulting serious behavioral issues. Also, it had been discovered that over the years, Orning had manipulated Miranda into thinking she had no parental rights. Since the case began, Miranda had worked with the Department to make significant progress, and the children wanted to reunite with their mother. The court ruled from the bench, first finding that "we're not talking about adoptability in this case because the Department is going to work with the mother." The court also found that clear and convincing evidence supported its decision that it was in the children's best interest to terminate parental rights considering the hearing testimony and Orning's inability to care for the children.

The termination order was entered August 12, 2025. In pertinent part, the circuit court found that it was the children's preference and in their best interest to have no contact with their father going forward. The court found that Orning has a long history of abusing the children, and they were severely traumatized because of the abuse. The court determined that "the Department is continuing to move forward with reunification efforts of the children with their mother, [and] the adoptability of the children is not an issue as to this termination proceeding."

Orning timely filed his notice of appeal, and this appeal followed.

II. *Discussion*

A. Standard of Review and Applicable Law

4

We review termination-of-parental-rights cases de novo. *Brown v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that termination is in the children's best interest. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction that the allegation has been established. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, we ask whether the circuit court's finding on the disputed fact is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

Orning does not challenge the statutory grounds for termination; rather, he contends that the circuit court's best-interest finding must be reversed. In making a "best-interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2023); *Smith v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364.

While the circuit court must consider the likelihood of adoption, that factor is not required to be established by clear and convincing evidence. *Caldwell v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719.

## B. Adoptability

5

Orning argues that the circuit court's best-interest finding was clearly erroneous because there was no evidence before it regarding the likelihood of adoption, and the circuit court made no finding that such evidence legally would not have mattered. Specifically, Orning argues that the court's statement, "[W]e're not talking about adoptability in this case because the Department is going to work with the mother," and its finding in the termination order that "the adoptability of the children is not an issue as to this termination proceeding" demonstrate that the court made an "outright decision" not to address adoptability. We disagree.

Adoptability is merely a consideration and not a requirement; however, this court has held that "consideration of this factor requires evidence, *or* at least some finding by the circuit court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal       difference." *McNeer v. Ark. Dep't Hum. Servs.*, 2017 Ark. App. 512, at 7, 529 S.W.3d 269, 273 (emphasis added).

*Davidson v. Arkansas Department of Human Services*, 2019 Ark. App. 402, 585 S.W.3d 738, is similar to the instant case in that the circuit court determined that adoptability was not a legally significant issue. This court found that because the Department was not seeking to terminate the parental rights of the child's mother, the issue of adoption was "premature." 2019 Ark. App. 402, at 6, 585 S.W.3d at 742. Unlike the instant case, in *Davidson*, there was "sufficient testimony about the lack of known barriers to [MC]'s adoptability." *Id.* However, this court went on to hold that the circuit court's finding that

'the level of abuse and neglect . . . Davidson subjected [MC] to create[d] a threat of harm such that warrant[ed] terminating his parental rights without freeing the child for adoption.' By making this finding, the circuit court ensured the satisfaction of its duty to consider adoptability in light of [MC]'s overall best interest. . . . Given the evidence as recounted above, there were serious and obvious concerns about the danger Davidson posed to his child and his indifference to protecting and caring for her and meeting her physical and developmental needs; thus, in this case, the adoptability issue made no legal difference.

*Id.* (citations omitted).

In the instant case, the circuit court found that it was in the children's overall best interest to terminate Orning's parental rights because it had come to light during the pendency of the case that he had severely abused his children, the children suffered extreme trauma, and they never wanted to see their father again. As in *Davidson*, the circuit court found that adoptability was not a legally significant issue due to the best-interest finding regarding the abuse the children had endured and the current goal of reunification with their mother. Accordingly, we affirm.

Affirmed.

HARRISON and ABRAMSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services Office of Chief Counsel, for appellee.

*Janet Lawrence Blankenship*, attorney ad litem for minor children.