SLIP OPINION



Cite as 2017 Ark. App. 512

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-313

| | |
|---|---|
| JOHNA McNEER<br>APPELLANT | **Opinion Delivered** October 4, 2017 |
| V. | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT<br>[NO. 10JV-15-28] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br>APPELLEES | HONORABLE ROBERT E. McCALLUM, JUDGE<br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Johna McNeer appeals from the decision of the Clark County Circuit Court to terminate her parental rights to her twin children, M.T.M.1 and M.T.M.2 (d/o/b 3/22/07). On appeal, she does not contest the circuit court's finding that sufficient statutory grounds supported the termination. Instead, she challenges the best-interest prong, arguing that there was insufficient proof regarding the adoptability of the children and the potential harm they faced if returned to her custody. For the reasons set forth below, we affirm.

I. *Background*

The Arkansas Department of Human Services (DHS) has a significant history with McNeer and her twin children. DHS opened a preventive-services case when the children were born with cocaine in their systems. DHS later filed a petition for emergency custody and for a finding of dependency-neglect in April 2015, alleging neglect and parental unfitness.

McNeer had been involved in a hit–and–run accident and was being placed under arrest when officers found possible cocaine in her car within reach of the children. McNeer also had a warrant out of Little Rock and another out of Searcy. McNeer refused to take a drug screen for DHS but admitted that she would be positive for marijuana and crack cocaine. Because McNeer had no family who could take the twins, DHS took custody of the children.

The children were subsequently adjudicated dependent-neglected due to neglect and parental unfitness. Specifically, the court found that McNeer had used cocaine immediately prior to the removal of the children and had left cocaine within reach of the children. McNeer stipulated to these findings. The court set the goal of the case as reunification and directed DHS to develop a case plan.

In June 2015, the circuit court entered an order returning custody of the children to McNeer. In July 2015 and October 2015, the court entered review orders continuing custody with McNeer, finding that she had substantially complied with the case plan and that she had completed a drug-treatment program. The return of custody, however, was short lived. In November 2015, DHS filed another motion for ex parte emergency change of custody. The affidavit accompanying this motion noted that since the children had been returned to McNeer's custody in June, McNeer had experienced some mental-health problems that necessitated treatment at a dual-diagnosis treatment facility. McNeer was released from treatment in September with a plan to complete three drug screens per week and attend a twelve-step program. Despite that plan, McNeer attended only two drug screens in the week after she had been discharged and one the following week, and she failed to appear for any

other drug screens after that time. In addition, McNeer failed to meet with DHS staff despite repeated requests that she do so, and her children missed multiple days of school after she had been discharged from treatment. When DHS was finally able to contact her, McNeer texted her caseworker to say that she was going to give custody of her children to an aunt in Mississippi.

The court once more adjudicated the children dependent-neglected in March 2016 due to neglect and parental unfitness as a result of McNeer's drug use.[1] The goal of the case remained reunification at that time. By the time of an August 2016 review order, however, the court found that the case plan was not moving toward an appropriate permanency plan for the children. The court found that McNeer had not complied with the case plan because she had been incarcerated since March 2016. Following a permanency-planning hearing in September 2016, the court changed the goal of the case to adoption and authorized DHS to file a petition for termination of parental rights. In its order, the court noted that McNeer was serving a four-year prison sentence related to a revocation of her probation stemming from the March 2015 hit-and-run accident and her guilty plea to possession of drugs and drug paraphernalia.

---

[1]McNeer stipulated to the facts contained in the affidavit of probable cause; in addition, she admitted to using drugs after her children had been removed from her custody in November.

DHS subsequently filed a petition for termination of McNeer's parental rights alleging four statutory grounds for termination[2] and that termination was in the best interest of the children. After a hearing, the circuit court entered an order terminating McNeer's parental rights, specifically finding that the termination was in the best interest of the children.

McNeer filed a timely notice of appeal and now argues to this court that the circuit court erred in finding that termination was in the children's best interest. Specifically, McNeer argues that there was a "complete lack of evidence . . . establishing the adoptability of the children" and that the evidence was insufficient to show that returning the children to her posed a risk of potential harm.

## II. *Standard of Review*

The rights of natural parents are not to be passed over lightly. The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. *Id.* The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2015). The second step

---

[2]Because McNeer does not challenge the statutory grounds on which the circuit court found termination to be appropriate, the specific grounds pled are not enumerated herein for the sake of brevity.

 

requires consideration of whether the termination of parental rights is in the children's best interest. Ark. Code Ann. § 9–27–341(b)(3)(A).

The appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit judge's personal observations. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122.

### III. *Adoptability*

A circuit court may terminate a parent's rights only if it finds by clear and convincing evidence that it is in the best interest of the juvenile. Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Fox, supra.* The court determines whether termination is in the juvenile's best interest by considering two factors: (1) the likelihood that the juvenile will be adopted if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9–27–341(b)(3)(A)(i)–(ii).

In her first argument on appeal, McNeer asserts that no evidence was introduced at the termination hearing to establish the adoptability of the children. Here, McNeer argues that "the plain language" of section 9-27-341(b)(3)(A)(i) makes consideration of the likelihood

that the children will be adopted "mandatory." It is true that our court has interpreted the statute as having that meaning. *See Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, at 5, 456 S.W3.d 383, 387 (citing *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28). The statute does mandate that the circuit court "consider" the likelihood of adoptability. The statute does not, however, mandate that the circuit court make a specific finding that the children are adoptable, nor must the court find the children are "likely" to be adoptable. The statute only mandates the "consideration" of the likelihood of adoptability.

We have held that adoptability is "*but one factor* that is considered when making a best–interest determination." *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, at 6, 385 S.W.3d 285, 288 (emphasis in original) (citing *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005)). To that end, we have held that adoptability "is not an essential element in a termination case." *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, at 7, 389 S.W.3d 1, 4; *see also Smith v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 368, at 8, 523 S.W.3d 920, ___ (stating that termination requires that the circuit court consider the likelihood of adoption but that the factor does not require that adoptability be proved by clear and convincing evidence); *Singleton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 455, at 6, 468 S.W.3d 809, 813 (noting that adoptability is not an essential element of proof). Rather, it is the "best interest" finding that must be supported by clear and convincing evidence. *Salazar v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 218, at 14, 518 S.W.3d 713, 722. With these standards in mind, we will now consider the evidence concerning the factor of adoptability before the circuit court in conjunction with McNeer's arguments.

Here, McNeer argues that no evidence of the adoptability of the children was introduced at the termination hearing and that several cases from this court support a reversal of the circuit court's adoptability findings. We disagree with both contentions.

McNeer's assertion that no evidence of adoptability was introduced at the termination hearing is factually inaccurate. The court heard from two witnesses—DHS caseworker Patrice Judd and CASA volunteer Meredith Bell—concerning adoptability. In addition, the court received a court report prepared by DHS as well as a CASA report, both of which contained evidence of adoptability. Specifically, the CASA report reflected that McNeer's cousin, Sonya Powell, had requested a home study to be conducted and had stated that she and her family were interested in adopting the children. The court considered evidence of the children's foster placement, their need for stability, and the interest of a relative in possible adoption. Thus, there was evidence before the circuit court on which it could base its consideration of the adoptability of the children, and we are unable to say that the court's finding was clearly erroneous. We therefore cannot agree with McNeer that DHS "failed to introduce *any* evidence of the adoptability of the children." (Emphasis in original.)

We also do not agree with McNeer that previous decisions of this court compel reversal. With respect to the degree and nature of the evidence necessary on the issue of adoptability, we have held that consideration of this factor requires evidence, or at least some finding by the circuit court that other aspects of the best–interest analysis so favor termination that the absence of proof on adoptability makes no legal difference. *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4. Likewise, we have explained that DHS is not required

to provide the names of specific adoptive parents for the children or even provide evidence that it has identified such persons at the termination hearing. *Canada v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 476, at 5; *Singleton*, 2015 Ark. App. 455, at 6, 468 S.W.3d at 813. In short, we have held that neither the statute nor our case law requires a specific quantum of evidence in the consideration of the likelihood of adoption. *See Renfro*, *supra*.

We find each citation offered by McNeer to be distinguishable from the facts of this case. For example, McNeer's citation to *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, is inapposite. *Grant* dealt with the inadequate nature of the evidence of adoptability. Here, McNeer argues the total lack of evidence concerning adoptability, not the inadequacy of the evidence that was presented. We thus find the situation in *Grant* to be inapplicable and not controlling on these facts.

McNeer also cites cases in which we reversed a circuit court's best–interest finding when there was no evidence of adoptability presented to the trier of fact. *See Haynes*, *supra*; *Kerr v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 271, 493 S.W.3d 342; *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272. In *Kerr*, although the circuit court's order stated that it understood that the foster parents had expressed an interest in adopting the children, there was no evidence introduced at the hearing to support that finding. Instead, the only evidence on adoptability was the child's testimony that she wished to be adopted. 2016 Ark. App. 271, at 8, 493 S.W.3d at 347. In *Haynes*, this court held that not only did the record show no consideration by the circuit court of adoptability as part of its best–interest analysis, there had been no evidence of adoptability introduced at the termination hearing.



As previously discussed, the facts of this case are decidedly different. Here, the court did have evidence of adoptability introduced at the termination hearing. Thus, McNeer fails to provide convincing authority that the circuit court erred in its adoptability determination.

## IV. *Potential Harm*

In her second point, McNeer argues that the circuit court erred in finding that returning the children to her presented a risk of potential harm. She contends that the evidence showed that she and her children were closely bonded and shared a loving and positive relationship. She points to the testimony of the children's therapist, who recommended that even if McNeer's parental rights were terminated, she should still be allowed the possibility of visitation in the future. Although she acknowledges her history of drug abuse, she nonetheless takes the position that the evidence was insufficient to show that termination was in the children's best interest.

In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Gulley v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 367, 498 S.W.3d 754; *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. This court has consistently noted that continuing drug use demonstrates potential harm to children. *See Eldredge v. Ark. Dep't of Human Servs.*, 2014 Ark.

App. 385; *Davis v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 815, 370 S.W.3d 283; *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004).

Here, there was evidence of both McNeer's ongoing drug use *and* the harm caused by the lack of stability. CASA Director Stephanie Hrabal spoke to both issues when she testified that the specific harm that would result to the children in the event of reunification would come from McNeer's "very strong" drug addiction and her lack of stability throughout the case; she opined that the children would not have a stable environment if they were reunified with their mother. Hrabal acknowledged that there was definitely a bond between the children and McNeer and that the children "have always appeared to love their mother." Despite that, Hrabal expressed concern that McNeer had told her that she had been in and out of "ten to fifteen different rehabs across the country over the past . . . fifteen, twenty years."

Likewise, the children's therapist, Heather Story, noted that both children had expressed to her that "they would be best in a different home" and that they were "ready for some resolution and closure." CASA volunteer Bell testified that the children had "so much anxiety from not knowing what's going to happen, where they're going to go, where they're going to be, who they're going to be with." Additionally, McNeer was incarcerated at the time of the termination hearing, and it was unclear exactly when she was going to be released.

As noted above, potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122; *Pine v. Ark. Dep't*

*of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. We therefore conclude that there was ample evidence before the circuit court that it could consider on the potential-harm factor, and the court's decision to terminate McNeer's parental rights was not clearly erroneous.

Affirmed.

GRUBER, C.J., and BROWN, J., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.