A. Best Interest
In her first point on appeal, Whitaker argues that the circuit court erred in finding that termination of her parental rights was in the best interest of her children. In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent.
*727 Ford v. Ark. Dep't of Human Servs. , 2014 Ark. App. 226, at 2, 434 S.W.3d 378, 380 ; Tucker v. Ark. Dep't of Human Servs. , 2011 Ark. App. 430, 389 S.W.3d 1. Whitaker challenges the circuit court's findings with respect to both adoptability and potential harm.
1. Adoptability
A best-interest finding under the Arkansas Juvenile Code must be based on the consideration of two factors, the first of which is the child's likelihood of adoption. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) (Supp. 2017). Adoptability is not a required finding, and likelihood of adoption does not have to be proved by clear and convincing evidence. Duckery v. Ark. Dep't of Human Servs. , 2016 Ark. App. 358, 2016 WL 4455696. We have previously explained that the Juvenile Code does not require "any 'magic words' or a specific quantum of evidence" to support a finding as to likelihood of adoption. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, at 8, 502 S.W.3d 569, 576. The law simply requires that the court consider adoptability and that if there is an adoptability finding, there must be evidence to support it. See Haynes v. Ark. Dep't of Human Servs. , 2010 Ark. App. 28, 2010 WL 135194 (reversing a best-interest determination because no evidence of adoptability was introduced and the court failed to consider adoptability).
Whitaker argues that the circuit court erred in finding that the children were adoptable because the evidence relied on to make that finding was "speculative, at best." She contends that the plain wording of Arkansas Code Annotated section 9-27-341 makes consideration of the likelihood that the children will be adopted "mandatory" and that there must be some quantum of evidence to support a circuit court's finding on adoptability. She complains that the adoption specialist, Danyetta Pride, did not testify as to any specific characteristics of the children that made them adoptable and that her testimony that the children were adoptable "as a sibling group" did not indicate if all four children would be adoptable together, when C.W. had significant behavioral issues.
This court recently discussed the quantum of proof necessary to sustain a circuit court's findings regarding adoptability in McNeer v. Arkansas Department of Human Services , 2017 Ark. App. 512, 529 S.W.3d 269 :
McNeer asserts that no evidence was introduced at the termination hearing to establish the adoptability of the children. Here, McNeer argues that "the plain language" of section 9-27-341(b)(3)(A)(i) makes consideration of the likelihood that the children will be adopted "mandatory." It is true that our court has interpreted the statute as having that meaning. See Lively v. Ark. Dep't of Human Servs. , 2015 Ark. App. 131, at 5, 456 S.W.3d 383, 387 (citing Haynes v. Ark. Dep't of Human Servs. , 2010 Ark. App. 28 ). The statute does mandate that the circuit court "consider" the likelihood of adoptability. The statute does not, however, mandate that the circuit court make a specific finding that the children are adoptable, nor must the court find the children are "likely" to be adoptable. The statute only mandates the "consideration" of the likelihood of adoptability.
We have held that adoptability is "but one factor that is considered when making a best-interest determination." Renfro v. Ark. Dep't of Human Servs. , 2011 Ark. App. 419, at 6, 385 S.W.3d 285, 288 (emphasis in original) (citing McFarland v. Ark. Dep't of Human Servs. , 91 Ark. App. 323, 210 S.W.3d 143 (2005) ). To that end, we have held that adoptability "is not an essential element in a termination case." Tucker v. Ark. Dep't of Human Servs. , 2011 Ark. App. 430, at 7, 389 S.W.3d 1, 4 ; see also *728 Smith v. Ark. Dep't of Human Servs. , 2017 Ark. App. 368, at 8, 523 S.W.3d 920, 926 (stating that termination requires that the circuit court consider the likelihood of adoption but that the factor does not require that adoptability be proved by clear and convincing evidence); Singleton v. Ark. Dep't of Human Servs. , 2015 Ark. App. 455, at 6, 468 S.W.3d 809, 813 (noting that adoptability is not an essential element of proof). Rather, it is the "best interest" finding that must be supported by clear and convincing evidence. Salazar v. Ark. Dep't of Human Servs. , 2017 Ark. App. 218, at 14, 518 S.W.3d 713, 722.
McNeer , 2017 Ark. App. 512, at 5-6, 529 S.W.3d at 272-73.
In light of the standard set out in McNeer , we hold that there was sufficient evidence on which the circuit court could base its findings regarding the adoptability of the children. As set out above, DHS adoption specialist Danyetta Pride specifically testified that the children are adoptable, are adoptable as a sibling group, and there are fifty-nine families on a data-matching list that had expressed interest in adopting children with the same characteristics of these children. Our appellate courts have repeatedly held that the testimony of an adoption specialist is sufficient to support a circuit court's adoptability findings. See, e.g. , Martin v. Ark. Dep't of Human Servs. , 2017 Ark. 115, 515 S.W.3d 599 ; Brumley v. Ark. Dep't of Human Servs. , 2015 Ark. 356, 2015 WL 5895440 ; Hughes v. Ark. Dep't of Human Servs. , 2017 Ark. App. 554, 530 S.W.3d 908 ; Thompson v. Ark. Dep't of Human Servs. , 2012 Ark. App. 124, 2012 WL 386762.
2. Potential harm
In conducting the best-interest analysis, the court must consider the potential harm in returning the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(ii). This potential-harm inquiry is but one of the many factors that a court may consider, and the focus is on the potential harm to the health and safety of a child that might result from continued contact with the parent. Tadlock v. Ark. Dep't of Human Servs. , 2009 Ark. App. 841, 372 S.W.3d 403. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. Id. Furthermore, the potential-harm analysis should be conducted in broad terms. Id.
In her second subpoint, Whitaker argues that the court erred in finding that returning the children to her presented a risk of potential harm. She contends that the circuit court erred in focusing almost exclusively on her past struggles with drug addiction; in relying on a psychological evaluation administered in March 2016, shortly after this case was opened; and in failing to consider any evidence of the improvements she had made since the beginning of the case. She further cites to the testimony of the caseworker, who stated that she did not believe that termination was in the children's best interests.
However, the court did not rely solely on Whitaker's psychological evaluation, and it did not fail to note that she had made "efforts." The court found, however, that those efforts were "eleventh hour efforts" that did not compensate for her "significant pattern of polysubstance abuse ... going back at least ten years," her persistent relapses into drug abuse, her lack of insight, her mental-health issues, her very recent release from rehabilitation, and her failure to cooperate throughout the case. In Sharks v. Arkansas Department of Human Services , 2016 Ark. App. 435, 502 S.W.3d 569, this court upheld the circuit court's potential-harm findings based on similar evidence:
*729 Although Sharks tried to rehabilitate himself in the eleventh hour, these improvements need not be necessarily credited by the circuit court and do not necessarily outweigh evidence of prior noncompliance. By the time Sharks had been released from jail and had begun serious rehabilitation efforts, D.S. had been in DHS custody for nearly a year. Over the course of the case, Sharks tested positive for alcohol, was arrested at least twice for public intoxication, and was inconsistent in visiting D.S. While Sharks's purposeful efforts to complete most of the significant aspects of the case plan in the six weeks before the termination hearing are admirable, they do not warrant reversal. Had Sharks put forth those efforts earlier in the case, a termination may have been prevented, but Sharks's efforts to get his life together were still a work in progress at the time of the termination hearing. Given Sharks's history of mixing prescription medications and alcohol, his arrests for public intoxication, and his odd behavior during previous hearings, the court was not clearly wrong to find a likelihood of potential harm if D.S. was to return to his custody. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. Sharks's behaviors over the course of the entire case do not show enough stability and sobriety to render the court's finding that Sharks posed a risk of potential harm to D.S. clearly erroneous.
Sharks , 2016 Ark. App. 435, at 11, 502 S.W.3d at 577 (internal citations omitted).
Similarly, here, the circuit court's observation of Whitaker's past actions over the course of the case factored into its conclusions that her eleventh-hour improvements were not enough. We cannot say that the court's potential-harm finding was clearly erroneous.
B. Statutory Grounds
In her second point on appeal, Whitaker argues that the circuit court erred in terminating her parental rights because there was insufficient evidence offered to support the statutory grounds for termination. She challenges each of the three statutory grounds that the circuit court relied on to terminate; however, only one ground is necessary to terminate parental rights. See, e.g. , Lowery v. Ark. Dep't of Human Servs. , 2012 Ark. App. 478, 2012 WL 4009601. We hold that the circuit court can be affirmed based solely on its findings regarding aggravated circumstances. "Aggravated circumstances" means, among other things, that a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) .
Whitaker argues that the circuit court's aggravated-circumstances finding in the termination order was not supported by sufficient evidence because (1) there was a lack of proof as to the provision of timely services and (2) the conclusion that continued services would not result in reunification was mere speculation. However, the circuit court first made its aggravated-circumstances finding in the adjudication order, and the case law is clear that in termination cases, a challenge to a finding of abuse or aggravated circumstances must be made, if at all, in an appeal from the adjudication hearing. See Dowdy v. Ark. Dep't of Human Servs. , 2009 Ark. App. 180, 314 S.W.3d 722. Because there was no such appeal from the adjudication order, we are now precluded from addressing Whitaker's argument. See Denen v. Ark. Dep't of Human Servs. , 2017 Ark. App. 473, 527 S.W.3d 772 (explaining that when a party fails to appeal from an adjudication order and challenge the findings *730 therein, he or she is precluded from asserting error on appeal with respect to those findings from an order terminating parental rights). We therefore affirm the termination of Whitaker's parental rights.
II. Ramirez's Appeal
Ramirez's points on appeal are somewhat muddled, but he generally challenges the statutory grounds for termination and asserts that DHS failed to provide services to him in a timely manner.
A. Statutory Grounds
Ramirez argues that he was actively seeking to rehabilitate himself and the conditions that caused removal, that he was remedying all subsequent issues, and that the evidence did not support the circuit court's aggravated-circumstances conclusion that there was "little likelihood that services to the family will result in successful reunification." As with Whitaker, we hold that the circuit court can be affirmed based solely on its findings regarding aggravated circumstances. Again, the circuit court first made its aggravated-circumstances finding in the adjudication order, and the case law is clear that in termination cases, a challenge to a finding of abuse or aggravated circumstances must be made, if at all, in an appeal from the adjudication hearing. See Dowdy, supra. Because there was no such appeal from the adjudication order, we are now precluded from addressing Ramirez's argument and affirm on this point. See Denen, supra.
B. Timely Services
In his second argument on appeal, Ramirez argues that there was "conflicting evidence as to whether there is a compelling reason not to terminate" his parental rights. He argues that while DHS did provide him services, it "failed to provide such services timely. " (Emphasis in original.) As DHS points out in response, however, Ramirez did not raise an argument about the "timely" provision of services below and thus cannot raise it for the first time on appeal. See Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, 13-14, 538 S.W.3d 842 ; Maxwell v. Ark. Dep't of Human Servs. , 90 Ark. App. 223, 205 S.W.3d 801 (2005). We therefore affirm the termination of Ramirez's parental rights.
Affirmed.
Whiteaker and Hixson, JJ., agree.