Cite as 2020 Ark. App. 67

# ARKANSAS COURT OF APPEALS
## DIVISION I
**No.** CV-19-715

| | |
|---|---|
| PHILIP WALLACE<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** February 5, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72JV-18-756]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## RITA W. GRUBER, Chief Judge

Appellate counsel for Philip Wallace brings this no-merit appeal from the Washington County Circuit Court's order entered on July 1, 2018, terminating appellant's parental rights to his three children: NG, born November 11, 2015; AG, born November 17, 2016; and MG, born November 20, 2017. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting that there are no issues that would support a meritorious appeal. Counsel has also filed a motion asking to withdraw. The clerk of this court sent a copy of the brief and motion to withdraw to appellant, informing him that he had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(i)(3),

which he has filed. We grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

On September 7, 2018, the Arkansas Department of Human Services (DHS) exercised an emergency hold on the children based on allegations of sexual abuse of NG by appellant. DHS filed a petition for emergency custody. The affidavits in support of the petition explained that appellant's roommate had hidden his phone in appellant's bedroom with the recorder on. The phone recorded an encounter between appellant and NG indicating that NG had performed oral sex on appellant. The affidavit also detailed a subsequent interview of appellant by the Fayetteville Police Department in which appellant admitted having NG perform oral sex on him.

The circuit court adjudicated the children dependent–neglected in December 2018 due to appellant's sexual abuse of NG. The circuit court stated that it had listened to an audio file of the abuse in which appellant asked NG to perform oral sex on him; that it found credible the testimony of Officer Carnahan of the Fayetteville Police Department, who said appellant admitted the abuse in an interview after the event; and that the Crimes Against Children Division (CACD) of the Arkansas State Police had issued true findings against appellant for this incident and for two separate sexual–abuse incidents in 2009 with his nieces as victims. The court found the children were at imminent risk of more sexual abuse if placed with their father. The court also found that the Indian Child Welfare Act (ICWA), 25 U.S.C. sections 1902 et seq., applied to the children because the mother is a member of the Pawnee Tribe of Oklahoma.

The same day the court entered the adjudication order, the court entered an order granting DHS's motion to terminate reunification services, specifically finding that appellant had sexually abused and exploited NG and finding by clear and convincing evidence that there were no reunification services that could be offered to appellant that would result in successful reunification due to the clear pattern of sexual abuse that he had perpetrated on numerous female juvenile family members. Finally, the court found that appellant's putative parental rights had attached as to all three children.

On January 10, 2019, the court entered a permanency-planning order as to appellant, finding that DNA test results entered into evidence at the hearing confirmed appellant is the biological father of the children, finding him indigent, and appointing him an attorney. The court noted that the goal remained reunification with the mother with a concurrent goal of adoption, that the court had previously entered an order relieving DHS of the obligation to provide reunification services to appellant, and that the Indian child welfare expert had testified that the Pawnee Tribe agreed to change the goal to termination of appellant's rights based on the true findings of sexual abuse. Appellant testified at the hearing that he did not agree to change the goal of the case as to him because the circumstances surrounding the removal of the children were "speculatory" and "not complete." The court changed the goal to termination as to appellant, noting that it was not bound by the results of appellant's criminal case, finding that the evidence was not "speculatory" and that it had already found appellant had sexually abused NG, and finding that he had subjected the children to aggravated circumstances—specifically, by subjecting the children to extreme and repeated

cruelty and that there is little likelihood that services to appellant would result in successful reunification.

On February 5, 2019, DHS filed a petition to terminate appellant's parental rights. A final hearing was held on May 30, 2019. Appellant requested that the audio recording—previously introduced into evidence and played at the adjudication hearing—be played at the termination hearing. DHS entered the recording into evidence, and it was played at the hearing without objection.

Amanda Farren, the Pawnee Nation Indian child welfare coordinator, testified without objection as the Indian child-welfare expert. She testified that the children could not return to appellant due to the "horrendous abuse that occurred." Eugenia Marks, the DHS family-service worker, testified that appellant remained incarcerated on charges connected with the abuse of NG. She said that appellant had three true findings since 2009 with juvenile family members and that she did not believe there were any services that could be provided to appellant to correct his behavior.

Appellant testified and disputed the charges against him. He said that he did not believe a "factual case" had been made. He also contested the statements made by any detectives against him.

At the conclusion of the hearing, the court made the appropriate findings and terminated appellant's parental rights. The court's order was entered on July 1, 2019, finding that the children had been subjected to aggravated circumstances, specifically, extreme or repeated cruelty, sexual abuse as to NG, and that there is little likelihood that services to appellant would result in successful reunification. The court also found that it was in the

best interest of the children to terminate appellant's parental rights. Finally, the court found that a return of custody to appellant would result in serious emotional or physical damage to all three children.

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't. of Human Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730. To terminate parental rights, the court must find the existence of at least one statutory ground and that it is in the child's best interest to terminate. Ark. Code Ann. § 9-27-341 (Supp. 2019); *Kohlman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. A best-interest finding under the Arkansas Juvenile Code must include consideration of two factors: the likelihood of adoption and potential harm. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward-looking manner and in broad terms. *Riggs v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 185, at 5–6, 575 S.W.3d 129, 132.

For termination proceedings subject to the ICWA, the burden of proof is beyond a reasonable doubt. Ark. Code Ann. § 9-27-325(h)(3)(B)(2) (Supp. 2019). The ICWA also prohibits termination of parental rights to an Indian child "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).

Counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting the termination of appellant's parental rights. There was ample

evidence presented in the form of an audio recording of the abuse of NG and three true findings of sexual abuse against appellant to support the court's finding of aggravated circumstances. In addition, the court had previously ordered termination of reunification services and found that aggravated circumstances existed as a result of sexual abuse, extreme or repeated cruelty, and little likelihood that services would result in successful reunification.

Counsel has also adequately explained why there is sufficient evidence to support the court's best-interest finding. The DHS worker testified that all three children are adoptable. In addition, the court was warranted in finding that appellant posed potential harm to the children considering his pattern of sexual abuse to female juvenile relatives. The focus is on the potential harm to the health and safety of a child that might result from continued contact with the parent. *Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 841, 372 S.W.3d 403. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Whitaker v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 61, at 15, 540 S.W.3d 719, 728. On this record, the circuit court's finding that termination of appellant's parental rights was in the children's best interest was not clearly erroneous.

There is one additional adverse ruling addressed by counsel that occurred during appellant's testimony. Appellant's counsel attempted to go line by line through the adjudication order with appellant so that appellant could explain whether he thought each sentence was true or false. The court interjected, stating that it had already adjudicated the children dependent-neglected, the adjudication order had been admitted into evidence, and appellant's opinion about the court's findings were irrelevant. Appellant's counsel explained

that appellant's opinions were solely in regard to the findings about Officer Callahan's testimony because appellant had no counsel present at the hearing to dispute the officer's allegations. The attorney ad litem then objected, and the court sustained the objection. The court stated that its adjudication order was res judicata, it was not going to revisit its findings, and appellant's opinion about the findings was not relevant. Counsel contends in her no-merit brief that the adjudication order and its findings were not necessary to support the court's termination decision because evidence was admitted at the termination hearing to support termination. Counsel states that the audio recording reintroduced and played at the termination hearing, the testimony of the DHS caseworker, and the testimony of the ICWA expert amply support the termination. The aggravated-circumstances ground does not require DHS to prove that the children were adjudicated dependent-neglected. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)* (Supp. 2019).

Appellant raises several pro se points for reversal. Primarily, he argues that the facts of his case are illegitimate, "speculatory," and misleading; that inadmissible hearsay was introduced; and that he has not wronged his children and it is his right to raise them. He also requests that we appoint him competent appellate counsel because his counsel "no longer feels she is competent to handle my case for appeal." We agree with DHS and the attorney ad litem that most of appellant's arguments are new and cannot be made for the first time on appeal. *Mercado v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 495, at 5. In addition, this court will not reweigh the evidence on appeal or second-guess the court's credibility determinations. *Westbrook v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 352, at 5, 584 S.W.3d 258, 262. Finally, appellate counsel was appointed for appellant, and she has

filed this no-merit appeal pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i). To the extent appellant is attempting to argue that appellate counsel is ineffective, he offers no specific instances of ineffective assistance other than counsel's decision to file this no-merit appeal. He cites no authority for his contention that this constitutes ineffective assistance of counsel. We will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Strong v. State*, 372 Ark. 404, 419, 277 S.W.3d 159, 170 (2008).

From our review of the record and the brief presented to us, including consideration of appellant's pro se points, we find that counsel has complied with Rule 6-9(i) and hold that the appeal is without merit.

Affirmed; motion to withdraw granted.

ABRAMSON and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.