Cite as 2020 Ark. App. 78

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-803

| | |
|---|---|
| AMANDA HENSLEY | **Opinion Delivered** February 5, 2020 |
| APPELLANT | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT |
| V. | [NO. 75SJV-17-26] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Amanda Hensley appeals from the July 2019 order of the Yell County Circuit Court terminating her parental rights to her three children: her daughter EJ, her son RJ, and her daughter IJ.[1] On appeal, Hensley does not contest that there were statutory grounds to support the termination of her parental rights nor does she contest that there was potential harm to the children if they were returned to her custody. Hensley's sole argument on appeal is that there was inadequate evidence to support the circuit court's consideration of the likelihood that these children would be adopted, necessitating reversal. We disagree and affirm.

---

[1]The parental rights of the children's father, Jamie Jackson, were also terminated, but he does not appeal. Jackson did not participate in the case and was found to have abandoned the children.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

The children were taken into emergency custody of the Arkansas Department of Human Services (DHS) in mid-August 2017. The children were eight, seven, and five years old at that time. Hensley had physically and verbally abused her seven-year-old son, and she was arrested for domestic battery. Hensley and her children were living with Hensley's mother in Danville. The home was cluttered and filled with roaches, and the roof was falling.

Hensley stipulated to a finding that her children were dependent-neglected based on physical abuse and environmental neglect. Hensley was ordered to comply with certain case-plan requirements designed to help her reunify with her children, including attending and

2

completing parenting classes, obtaining and maintaining stable and appropriate housing and gainful employment, submitting to a drug-and-alcohol assessment and a psychological evaluation, and attending any recommended counseling. By January 2018, Hensley had not attended appointments to complete her drug-and-alcohol assessment nor had she completed a psychological evaluation or counseling.

The matter was reviewed in May 2018. Hensley had made some effort to be compliant with the case plan between January and May 2018, so DHS was given the authority to increase her supervised visits in its discretion, but Hensley's efforts waned. In early 2019, DHS filed a petition to terminate Hensley's parental rights, alleging three statutory grounds listed in Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2019) that were ultimately deemed proved by the circuit court: (1) the "out of custody for a year and failure to remedy" ground; (2) the "subsequent other issues arising" ground; and (3) the "aggravated circumstances" ground, meaning little likelihood of successful reunification. DHS also alleged that it was in the children's best interest that Hensley's parental rights be terminated.

The children had been out of their mother's custody for more than a year and a half by the time of the April 2019 termination hearing. Hensley admitted that she and her boyfriend had been arrested two weeks before for methamphetamine-related crimes. She also admitted that she had just been evicted from her apartment; she was working on getting out of that apartment, and she planned to find another apartment. She was working occasionally by cleaning houses or apartments "maybe three or four hours" a week and only when she needed extra cash, which she said she did not need. Hensley relied on the back

child-support payments she was receiving; she said she was owed about $8,000. She did not have a working vehicle; instead she borrowed her boyfriend's truck, although she was "not good at" driving the stick shift. Hensley attended some counseling, she attended anger-management and parenting classes (although she did not receive a certificate due to lack of participation), and she watched "The Clock is Ticking" video. Hensley believed she had done what DHS asked of her.

Willa Adair, the caseworker who had been involved with this family the entire time and who had been the caseworker who initially picked up the children, testified for DHS. Adair explained that Hensley sporadically tried to comply and did pretty well in the beginning but had ceased contact with DHS around December 2018. Stable housing and employment had been issues throughout the case. Hensley had never presented documentation of her housecleaning income, and she had been terminated from two previous jobs after short periods of time. Adair was very concerned about Hensley's having been arrested recently for a methamphetamine-related crime and having a boyfriend who was a drug user. Based on Adair's recent visit, the grandmother's home continued to be an inappropriate and unsafe place for the children. Adair had approximately twenty years of experience as a caseworker. Adair said she spent more hours on this case than any other case she ever had, and she did not believe Hensley could become a stable parent for these children, lacking a stable job, a home, and an understanding of what her children's safety required. Adair was concerned about Hensley's failure to take responsibility for what brought the children into DHS's custody, and she was worried that Hensley would expose

her children to her boyfriend. Adair stated that there were no factors with the children to prevent them from being adopted and that she thought they were adoptable.

According to DHS's court report that was entered into evidence, all three children were placed together at Second Chance Ranch in Saline County in December 2018 where they remained as of April 2019. Each child was receiving individualized medications for ADHD, sleep, and seasonal allergies, and they were in counseling at the Counseling Clinic in Benton. Each child had "gone through some struggles" with some behavioral issues, such as a need for attention, acting out, disruptive behavior, and impulsivity, but had "been able to adjust" with all the changes they had been through since being placed in foster care in August 2017. Each had been in several foster homes until finally placed together at Second Chance Ranch, and they had no physical limitations. The court report recited that Hensley had a poor understanding of what her children needed as far as safe and stable housing, reliable transportation, and adequate financial means of support. The children had no relationship with their biological father, he had no contact with DHS, and there were no relatives or fictive kin interested in or identified as being a provisional placement, a foster parent, a guardian, or a person desiring visitation. DHS wanted parental rights to be terminated to "allow the children to find a forever home through adoption."

The children's attorney ad litem recommended termination of parental rights, noting that the caseworker advocated for continued services longer than she would have. The circuit court agreed with DHS and the attorney ad litem, remarking that continued reunification services in this case would be "futile." Among the other findings made by the circuit court, it found Adair to be credible, and it found appellant to have "lived a

completely unstable life" and to lack insight into, or a willingness to work on, the problems in this case.

Hensley does not contest the circuit court's findings that DHS proved three statutory grounds against her or that there was potential harm to the children if they were returned to her custody. Her argument focuses on the best-interest finding, which requires that the circuit court consider the likelihood that the children would be adopted. Undoubtedly, the circuit court considered the children's adoptability. The circuit court's order recites that it did, and it referred to Adair's credible testimony about adoptability. At the heart of Hensley's argument is her assertion that Adair's testimony was no more than reciting that "all children are adoptable," which is inadequate evidence.

We disagree that Hensley has demonstrated clear error in the ultimate conclusion that the children's best interest was served by terminating parental rights. The circuit court had before it an expansive court report detailing each of the children's foster care situations, their current placement together, their lack of physical limitations, the lack of any potential relatives as placements, and DHS's desire to clear them for adoption. The circuit court had before it the seasoned caseworker's testimony that there were no barriers to *these children* being adopted, having been involved with this case and the family from the very beginning. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Boomhower v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 397, 587 S.W.3d 231. Evidence that adoptive parents have been found is not required and neither is evidence that proves the child will be adopted. *See Atwood v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 448, 588 S.W.3d 48; *Cole v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 121, 543 S.W.3d

540.  There is no requirement that an adoption specialist testify at the termination hearing or that the process of permanent placement be completed at the time of the termination hearing.  *Solee v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 640, 535 S.W.3d 687.  The statute does not mandate that the circuit court make a specific finding that the children are adoptable, nor must the court find the children are "likely" to be adopted. *Whitaker v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 61, at 14, 540 S.W.3d 719, 727.  The statute mandates only the "consideration" of the likelihood of adoptability.  *Id.*

We agree that a blanket statement that "all children are adoptable" is woefully inadequate evidence for the circuit court to consider on that issue, but this case presents a different situation.  There was ample evidence about these children's specific characteristics, their ages and needs, their lack of physical barriers for purposes of adoption, and a longtime caseworker's experience speaking to the likelihood of these children being adopted.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.