Cite as 2026 Ark. App. 272

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-25-624

| | |
|---|---|
| LEXUS TADLOCK<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered** April 29, 2026<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46JV-23-101]<br><br>HONORABLE CARLTON D. JONES, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Lexus Tadlock appeals from the order of the Miller County Circuit Court terminating her parental rights to her sons, MC1 and MC2. On appeal, Tadlock challenges the circuit court's finding that termination was in the juveniles' best interest. We affirm.

On March 22, 2023, an investigation was initiated on the basis of neglect due to inadequate supervision. MC1 was found on the side of the highway, alone, crying, and dirty after he wandered off from the home of a relative where Tadlock had left him. The Arkansas Department of Human Services ("DHS") took physical possession of MC1 and proceeded to Tadlock's residence. Tadlock refused DHS entry into the home; however, during the investigation, it was learned that the home had no running water, electricity, or food. On the basis of environmental neglect, a protective-services case was opened. An aunt, Heather Kuykendall, agreed to permit MC1 and MC2 to reside in her home until Tadlock cured the issues with her residence.

On August 8, Kuykendall brought MC1 and MC2 to the DHS office and informed DHS that she could no longer care for the juveniles, and she had no knowledge of Tadlock's whereabouts. Tadlock presented herself to DHS that same day and confirmed that she lacked stable housing, employment, and a valid driver's license. Tadlock tested positive for methamphetamine and admitted to recent marijuana use.

DHS exercised a seventy-two-hour hold on the juveniles and removed them from Tadlock's custody because her circumstances presented an immediate danger to the health or physical well-being of the juveniles. The following safety threats were identified and considered in making the decision to remove the juveniles: Tadlock does not meet the children's immediate needs for supervision, food, and clothing; and Tadlock's substance misuse seriously impairs her ability to supervise, protect, or care for the children.

DHS filed a petition for dependency-neglect on August 11 alleging that MC1 and MC2 were dependent-neglected as a result of neglect and/or parental unfitness. An ex parte order for emergency custody was entered on August 14 placing the juveniles in DHS's custody and finding that removal from Tadlock's custody was in their best interest and necessary to protect their health and safety.

An agreed adjudication order was entered on August 22. The order noted that Tadlock waived the probable-cause hearing and agreed to adjudication. The juveniles were adjudicated dependent-neglected on the basis of neglect and parental unfitness and were ordered to remain in DHS custody. The court found that the safety concerns that prevent trial placement, return of custody, or other placement with Tadlock include her substance abuse, which negatively affects her ability to care for the juveniles, and her inability or unwillingness to provide for the health and safety

needs of the juveniles evidenced by the failure of services to prevent removal of the juveniles during the protective-services case. The goal of the case was established as reunification with a concurrent goal of relative placement. Tadlock was ordered to start and complete all services outlined in the case plan, including but not limited to the following: psychological evaluation; drug-and-alcohol assessment; any recommended services of the providers; random drug screens; cooperate with homemaker services; obtain and maintain safe and stable housing; allow DHS to complete home visits; obtain and maintain stable employment; parenting classes; maintain appropriate contact with the juveniles; cooperate with DHS; and follow and abide by all of the court's orders.

A review hearing was held on November 13. The juveniles were ordered to remain in DHS custody due to parental unfitness. DHS was found to have complied with the case plan and to have made reasonable efforts to provide family services. Tadlock was granted supervised visitation at the discretion of DHS. Tadlock was found to have not complied with the case plan and orders of the court. Specifically, Tadlock was homeless and unemployed, missed two psychological evaluations, failed to complete the scheduled drug-and-alcohol assessment, refused drug screens, and admitted to continued use of methamphetamine. The court found that Tadlock did not demonstrate progress toward the goal of the case and did not benefit from her failure to complete the goals of the case plan.

Another review hearing was held on February 21, 2024. Continuation of custody with DHS was found to be in the juveniles' best interest and necessary to protect their health and safety. Tadlock failed to maintain regular contact with MC1 and MC2, missing several visits and/or arriving late for other visits. She had not complied with the case plan. Tadlock remained homeless and unemployed and had not completed the psychological evaluations; however, she submitted to a drug screen and tested negative for all substances. Tadlock refused subsequent drug screens.

On March 12, DHS filed a motion to terminate reunification services and notice of hearing seeking to terminate its obligation to provide the court-ordered services to Tadlock because of her failure to comply with the court's order. DHS alleged the juveniles were subjected to aggravated circumstances and there was little likelihood that services to the family would result in successful reunification. In support of the petition, DHS stated that Tadlock refused to accept that she has a substance-abuse problem. DHS made a referral for inpatient residential treatment; however, Tadlock left after less than one day. Further, she had not participated in or completed substance-abuse treatment and had recently been arrested for possession of a controlled substance.

At the April 3 hearing on DHS's petition to terminate reunification services, the court granted Tadlock seven days to start residential substance-abuse treatment and suspended visitation with the juveniles until treatment began. On May 13, the court entered an order terminating reunification services to Tadlock. The court found that Tadlock reported to the treatment facility after the expiration of the seven-day period but walked out that same day.

A permanency-planning hearing was held on May 15. The court changed the case goal to adoption, authorizing DHS to file a petition for termination of Tadlock's parental rights. A concurrent goal was set as permanent custody or guardianship with a custodian or relative. The court noted that Tadlock continued to abuse illegal substances to the detriment of herself and her children, she did not have appropriate housing, and she continued to avoid rehabilitative services to remedy issues that caused the removal of the juveniles from her custody.

At the July 10 review hearing, the court continued custody of the juveniles with DHS. The safety concerns that prevented trial placement, return of custody, or other placement with Tadlock included her substance abuse that negatively affected her ability to care for the juveniles; inability or

4

unwillingness to provide for the health and safety needs of the juveniles, evidenced by the failure of services to prevent removal of the juveniles during the protective-services case; discharge from drug treatment; lack of housing; and lack of employment or financial stability. The goal of the case for MC1 was set as authorization of a plan to place him in the custody of his father. The goal of the case for MC2 was set as relative placement. Tadlock expressed an intent to participate in inpatient rehabilitation treatment. DHS was ordered to arrange a visit between Tadlock and the juveniles once she provided notice of entering inpatient substance treatment. The order also corrected an error: Tadlock's recent arrest was mistakenly reported as possession of methamphetamine; however, she was arrested for failure to appear and failure to comply with a court order.

Another review of the case was held on October 10. DHS was relieved from providing Tadlock with visitation. Tadlock did not attend the hearing, but she was reportedly still homeless and unemployed. She previously stated an intent to attend inpatient rehabilitation treatment but failed to start or complete treatment after multiple referrals.

On December 16, DHS filed a petition to terminate Tadlock's parental rights to MC1 and MC2.[1] Following the March 19, 2025 termination-of-parental-rights hearing, the circuit court took the case under advisement. The court issued findings of fact and conclusions of law on June 10. A termination-of parental-rights order incorporating the findings of fact and conclusions of law was entered on July 17. Tadlock now appeals the termination-of-parental-rights order.

---

[1]The termination petition additionally sought to terminate the parental rights of MC1's legal father and the rights of MC2's putative father.

This court reviews termination-of-parental-rights cases de novo.[2] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[3] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] In determining whether a finding is clearly erroneous, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[6]

To terminate parental rights, a circuit court must find clear and convincing evidence that one or more of the statutory grounds for termination exists.[7] Proof of only one statutory ground is sufficient to terminate parental rights.[8] In terminating Tadlock's parental rights to MC1 and MC2, the circuit court found that clear and convincing evidence supported the following grounds: failure to remedy; failure to support; subsequent factors; and aggravated circumstances.

---

[2]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[3]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2023).

[8]*Tillman*, *supra*.

On appeal, Tadlock does not challenge the circuit court's finding that statutory grounds supported termination. Instead, her argument focuses on the circuit court's best-interest determination.

In addition to statutory grounds for termination, the circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[9]

In making its best-interest determination, the circuit court found that MC1 and MC2 are adoptable. Adoption specialist Murphy testified at the termination hearing that both boys are young and healthy. If submitted for adoption together, a data match identified eighty-seven prospective adoptive placements for MC1 and MC2. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.[10] Further, Tadlock fails to challenge the adoptability factor of the circuit court's best-interest finding; thus, it is unnecessary to address the evidence as to adoptability on appeal.[11]

In determining potential harm, the circuit court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody.[12] The circuit

---

[9]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

[10]*Hensley v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 78, 595 S.W.3d 68.

[11]*See Ealy v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 610, 701 S.W.3d 813.

[12]*Scott v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 347, 552 S.W.3d 463.

court is not required to find that actual harm would result or to affirmatively identify a potential

harm.[13] The potential-harm evidence must be viewed in a forward-looking manner and considered

in broad terms.[14]

As to potential harm, the circuit court found that the juveniles would be subjected to potential

harm because of Tadlock's failure to remedy the issues that resulted in removal of the juveniles and

continued dependency-neglect. In its findings of fact and conclusions of law, the circuit court stated,

> The remaining concern is whether it is in the boys' best interest that the petition be granted. Unfortunately, [the court] must conclude that granting the petition is the right course in this case. Whether because of a lack of concern for the well-being or some other cause. Ms. Tadlock has failed to follow the reunification plan set forth in this case. In the last four (4) months she has performed some services, but it is unclear whether these comply with the requirements of the reunification plan set forth in the court's orders. It is also a matter of speculation if going forward, Ms. Tadlock will comply with the reunification plan in this case or how long it would take to arrive at a place where the boys could be returned to her custody. She has not made substantive steps in resolving the issues that led to the removal. These boys are adoptable, and it is in their best interest right now that the case moves in this direction.

Tadlock contends that the circuit "court's uncertainty as to the efficacy or compliance of [her]

independent progress in the four months leading up to the termination hearing prevented the court

from properly considering and weighing the totality of the evidence as required[.]" First we take time

to clarify what Tadlock refers to as the court's "uncertainty." In its findings of fact and conclusions

of law, the court stated the following:

> On the date of this hearing, [MC1] had been out of the home of Ms. Tadlock three (3) days short of two (2) years. In that time, Ms. Tadlock had been ordered to enroll, on several occasions, in inpatient drug/alcohol treatment. She enrolled in Harbor House and left after one (1) day. She then enrolled in a detox program, which she completed. She also completed

---

[13]*Id.*

[14]*Id.*

the Acceptance Treatment program, but there is no indication of the length of this program, nor if it is an inpatient program. On this record, it is difficult to determine whether she has complied with the court's order directing inpatient treatment be completed. Ms. Tadlock has not maintained stable housing, nor has she maintained stable employment.

Clearly, the court was referencing the lack of evidence regarding the Acceptance Treatment program Tadlock completed—specifically, whether it was inpatient or outpatient treatment. As such, the court could not determine whether the program met the requirements of the court order. That is not to say that the court did not consider that Tadlock attended the treatment. In fact, its reference to the treatment program is an indication that it did, in fact, consider Tadlock's completion of the program.

Further, the record demonstrates that the circuit court did not terminate her parental rights solely because of its "uncertainty" about whether Tadlock completed the court-ordered inpatient drug-and-alcohol treatment. In its findings of fact and conclusions of law and the resulting termination order, the court pointed to Tadlock's continued unstable housing situation, lack of employment, and inconsistent exercise of visitation with MC1 and MC2. Importantly, due to her refusal to attend residential substance-abuse treatment, Tadlock's visitation privileges were suspended. In the eleven months that followed until the termination hearing, Tadlock had no contact with either the DHS caseworker or the juveniles. Tadlock failed to maintain sobriety, testing positive for methamphetamine six different times throughout the pendency of the case. She also failed to attend her scheduled psychological evaluations and team meetings. It is clear that the court considered the entirety of the case, including her recent completion of drug treatment. Tadlock's

argument amounts to a request for this court to reweigh the evidence in her favor, which we cannot do.[15]

We have noted that a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody.[16] We have also held that a parent's failure to comply with court orders itself is sufficient evidence of potential harm.[17] A parent's continued use of illegal drugs similarly demonstrates a risk of potential harm.[18]

Each of these considerations was present in this case. As to Tadlock's past behavior, she historically lacked stability in maintaining safe and appropriate housing and employment. She failed to comply with the case plan until the last minute, if even then. Throughout the case, Tadlock's substance-abuse issues continued to be of concern. The circuit court emphasized the importance of residential treatment and sobriety, yet she repeatedly tested positive for methamphetamine.

We hold that the circuit court did not clearly err in finding that termination of Tadlock's parental rights was in MC1's and MC2's best interest, particularly that the juveniles faced a risk of potential harm if returned to Tadlock's custody.

Affirmed.

THYER and WOOD, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

---

[15]*See Barton v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 239, 576 S.W.3d 59.

[16]*See Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, 529 S.W.3d 684.

[17]*See Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915.

[18]*Loveday v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 282, 435 S.W.3d 504.

*Ellen K. Howard*, Ark. Dep't of Human Services Office of Chief Counsel, for appellee.

*Linda J. Hamilton*, attorney ad litem for minor children.